IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No.  04-cv-01150-LTB-BNB

BARBARA WALDRON,
RICHARD SARRO, and
ELIZABETH BROOKHART,

           Plaintiffs,

v.

JAMES DRURY, individually,
DAVID D. STONG, in his official capacity as Sheriff of the County of Alamosa;
ALAMOSA COUNTY SHERIFF'S DEPARTMENT, a political subdivision of the State of
Colorado; and
ALAMOSA COUNTY BOARD OF COMMISSIONERS, a political subdivision of the State of
Colorado,

           Defendants.

_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, C.J.

       This case is before me on a Motion to Dismiss and/or Motion for Summary Judgment,

filed by Defendants James Drury and the Alamosa County Board of Commissioners, seeking

judgment against Plaintiffs, Barbara Waldron, Richard Sarro, and Elizabeth Brookhart.  **[Doc. #**

**60]**  Also before me is a Motion for Summary Judgment filed by Defendants David D. Stong, in

his official capacity as Sheriff of the County of Alamosa, and Alamosa County Sheriff's

Department.  **[Doc # 62**]  After consideration of the motions, as well as all related pleadings and

exhibits, and counsels' argument presented at the hearing on June 13, 2006, at 9:00 AM, both

motions are GRANTED.

## *I. Background*

Plaintiffs filed this action seeking relief against Defendants for "Interference with the Right of Access to the Courts" pursuant to 42 U.S.C. §1983 in connection with Defendants' criminal investigation of their mother's death in 1984. Plaintiffs' mother, Edna Marie VanDerVeen, died from a single gunshot to her forehead on the evening of April 18, 1984, at the home of her boyfriend, George Cottrell. The Alamosa County Sheriff's Department responded to the scene and commenced an investigation. Ultimately, it was determined that the wound was self-inflicted and, as a result, no charges were brought against Mr. Cottrell.

Plaintiffs now claim that Defendants deliberately engaged in conduct, during the investigation of their mother's death, which directly and terminally interfered with their right to subsequently bring a wrongful death action in state court against Mr. Cottrell. Specifically, Plaintiffs assert in their amended complaint that Defendants "deliberately engaged in conduct which blatantly disregarded the Plaintiffs' rights during the investigation of Edna Marie VanDerVeen's death, which interfered with the Plaintiffs' right to bring a wrongful death action in state court." As Plaintiffs' counsel stated during oral argument, the pivotal focus here is on the conduct of the remaining individual Defendant, Sheriff Drury.

The amended complaint alleged the following actions by Defendant Drury – under the color of law and pursuant to the policies, practices and customs of the Alamosa County Sheriff and Alamosa County Board of Commissioners – related to the investigation and conduct at the scene:

> (a) Failure to properly secure the scene as a possible homicide; (b) Failure to provide a way to train employees and agents in such a manner that amounted to deliberate indifference in the rights of citizens with whom these employees

2

interacted in regards to their securing, and investigation of the crime scene; (c) evidence was not properly collected, obtained, secured, or tested; (d) ballistic tests were not ordered; (e) George Cottrell, was not properly interviewed; (f) Mr. Cottrell's hands were not properly secured by bagging until after he had an opportunity to compromise the integrity of any gun shot residue by virtue of hand washing or hand wiping while in the presence of such Defendants, thereby precluding an accurate gun shot residue test; (g) The results of the gun shot residue tests performed on Mr. Cottrell's hands were not compared to the weapon found next to Ms. VanDerVeen's body; (h) No finger print testing was performed for comparison to others aside from Ms. VanDerVeen; (I) Failure to follow-up on the investigation of Mr. Cottrell as a suspect in the matter even after the Coroner's report signed April 24, 1984.

## *II. Statute of Limitations*

As a threshold matter, I first address whether Plaintiffs' claim is time barred.   In a civil rights action brought under 42 U.S.C. §1983, the applicable state statute of limitations governs. *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005).   In this case, the parties agree that Colorado's residual two-year statute of limitations applies.  Colo. Rev. Stat. §13-80-102(1); *see also Stump v. Gates*, 777 F. Supp. 808, 821 (D. Colo. 1991), *affirmed in an unpublished opinion*, 986 F.2d 1429 (10th Cir. 1993).

However, federal law governs the question of accrual of federal causes of action and dictates when the statute of limitations begins to run for purposes of §1983 claims.  *Smith v. City of Enid By and Through Enid City Com'n,* 149 F.3d 1151, 1154 (10th Cir. 1998) (*citing Baker v. Board of Regents*, 991 F.2d 628, 632 (10th Cir. 1993)).   "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Smith v. City of Enid, supra*, 149 F.3d at 1154 (citations omitted).  Since the injury in a §1983 case is the violation of a constitutional right, such claims accrue "when the plaintiff knows or should know that his or her constitutional rights have been violated."  *Id.*  Where, as here, the facts and dates

are not disputed, the court may, as a matter of law, determine when a cause of action accrued.  *Id.*

(*citing Edwards v. International Union,* 46 F.3d 1047, 1050 (10th Cir.1995)).

Plaintiffs were teenagers when their mother died in April of 1984.  At the time, Plaintiff

Brookhart – who had witnessed her mother and Mr. Cottrell in a heated physical argument just

prior to her death – had to be convinced by Defendant Sheriff Drury that it was suicide.  Six years

later, in 1990, Brookhart visited Mr. Cottrell in New Mexico when he told her that, contrary to

what he had told the police, he was actually in the house when the gun went off while both his and

her mother's hands were on it.  Brookhart did not reveal this discussion to anyone until sometime

in 2003.

Plaintiff Waldron had not spoken to Mr. Cottrell until 1992 when he told her, during a

phone conversation, that her mother did not commit suicide, but rather that his hand was also on

the gun when it went off.  Waldron testified in her deposition that directly after this conversation

she contacted Sheriff Drury.  Drury informed her that "there was nothing he could do about"

Cottrell's new version of the events, and that her mother's death was "clearly a suicide."

Waldron further testified that during this conversation, she asked Drury for "any information as

far as what took place that night" or "any diagnosis or such that showed that is was a suicide,"

and that Drury responded that "he was not allowed to release those documents to me."

Directly thereafter, Waldron called her brother, Plaintiff Sarro, a police officer.  During

this conversation, Sarro "discounted" Cottrell's new version of events – even though he had

always harbored suspicions that their mother did not commit suicide and that Cottrell was

involved in her death – because he thought that Cottrell was just trying to "appease" Waldron.

He told Waldron that their mother committed suicide, and advised her that she should "leave it

alone." Sarro remembers that Waldron told him that she had talked to the Alamosa County Sheriff's Department, but he doesn't remember whether she related to him "that the Department was refusing to provided her with information or release documents."

    Plaintiffs did not take any further action until ten years later, in 2002, when Plaintiff Waldron again contacted the Alamosa County Sheriff's Department. As a result of this contact, Waldron apparently attempted to assist law enforcement to obtain a confession from Mr. Cottrell, but such attempt was ultimately unsuccessful and no criminal charges were filed. Waldron subsequently sought legal counsel in June of 2002 to find out what Plaintiffs' rights were and to "get justice for [her] mother." In Plaintiffs' amended complaint, they contend that it was from local media reports in February 2004 – and their related conversations with reporters, the Colorado Bureau of Investigations and other investigators – that they "learned the facts and allegations contained" in their complaint, which was filed in June of 2004.

Defendants argue that Plaintiffs' lawsuit is untimely. They assert that each of the Plaintiffs was on notice of the facts underlying their claim in 1992 at the very latest and, thus, their lawsuit filed in 2004 is barred by the two-year statute of limitations. Specifically, they assert that Plaintiff Brookhart was on notice in 1990 when Cottrell told her that he had lied to police and that he was involved with her mother's death. Likewise, Plaintiff Waldron was on notice in 1992 when Mr. Cottrell told her the same revised version of events. Plaintiff Sarro – who had always suspected that his mother was murdered – was also on notice at that time when Waldron relayed her conversation with Mr. Cottrell to him in 1992.

In response, Plaintiffs argue that their "suspicions" that their mother's death was not a suicide do not constitute notice that their constitutional right to access the courts in order to

litigate a civil wrongful death action was violated by Defendants' actions.  Plaintiffs cite *Stump v. Gates*, *supra*, 777 F. Supp. at 813.  There, the children of the decedent/father filed a §1983 access-to-courts claim in which they alleged that the investigation of their father's death by the defendants was deficient and, as a result, they were precluded from filing a wrongful death suit against their stepmother.  The court in *Stump v. Gates* rejected the defendants' argument that because the plaintiffs had "knowledge of many of the vital facts alleged in the amended complaint" more than two years prior to the time they filed suit, it violated the Colorado statute of limitations.

The *Stump v. Gates* court first noted that it could find no federal case defining when a §1983 action for denial of access to the courts accrues.  After examining analogous cases for guidance, that court concluded that "where concealment of facts giving rise to the claim is alleged, the limitations period is tolled until the injury and its cause are discovered, or by due diligence should have been discovered."  *Id.* at 822.  As such, the court ruled that where the essence of the claim is that the defendants have wrongfully deprived the plaintiffs of access to judicial remedies, "the plaintiffs must know that they have been deprived of judicial access and know the manner of deprivation before the limitations period begins running, unless, of course, reasonable persons in their situation should have had such knowledge." *Id.*

I agree that Plaintiffs knew, or should have known, of their right to a wrongful death claim against Mr. Cottrell in 1990 and 1992, when he confessed that he had lied about his involvement in the circumstances of their mother's death.  But, the gravamen of Plaintiff's claim and injury here is the violation of their constitutional right to access the courts.  So, the relevant inquiry in this case is when they knew, or should have known, that Defendants' actions during the

investigation of their mother's death served to deprive them of that access.  *See Smith v. City of Enid, supra,* 149 F.3d at 1154 ("[s]ince the injury in a §1983 case is the violation of a constitutional right, . . . such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated")(citations omitted).

While I agree with Defendants that Cottrell's confessions in 1990 and 1992 constituted sufficient knowledge of a viable wrongful death claim against Cottrell, such knowledge is insufficient, in and of itself, to start the accrual of the limitations period in this §1983 action for an alleged violation of Plaintiffs' constitutional right to access the courts.   I disagree with Defendants' argument that the knowledge that Cottrell lied to the police put Plaintiffs on inquiry notice that something must have been wrong with the police investigation of their mother's death.  Rather, I conclude that it is Plaintiffs' knowledge of the alleged deficiencies in the underlying investigation that triggers the accrual of the cause of action for the injury alleged in this §1983 claim against Defendants.  *See Donohue v. Hoey,* 109 Fed.Appx. 340, 356 (10th Cir. 2004)(not selected for publication)(claims related to police investigation improprieties that occurred over two years prior to the filing of the lawsuit were untimely when "nothing [in the record] indicates that the [plaintiffs] did not know of those alleged violations at or around the time they happened," but other claims were not barred by the statute of limitations when the plaintiffs "had no reason to know that anything unusual had happened to the evidence" until later).  Because Defendants do not challenge when Plaintiffs became aware of the alleged investigation improprieties and alleged related training policies or deficiencies sometime in 2002, I conclude that their §1983 claim for depravation of their constitutional right to access to the courts, filed in 2004, is not barred by the applicable two-year statute of limitations.

### *III.  Qualified Immunity*

I next address Defendant Sheriff Drury's contention that he is protected from Plaintiffs' claim by the doctrine of qualified immunity.  Qualified immunity is a judicially created affirmative defense which protects state officials sued in their individual capacity for civil damages under §1983.  *See DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001).  Thus, when government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

"[T]he affirmative defense of qualified immunity . . . protects all but the plainly incompetent or those who knowingly violate the law."  *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001)(internal quotation marks omitted).  Whether a defendant is entitled to a qualified immunity defense is a question of law that should be resolved at the earliest possible stage in litigation.  *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

In contrast to a typical motion for summary judgment, once a defendant pleads qualified immunity the plaintiff bears a heavy two-part burden to show that qualified immunity does not exist.  *Albright v. Rodriguez*, 51 F.3d 1531, 1534 -1535 (10th Cir. 1995).  The plaintiff must first establish that the defendant's conduct violated a constitutional right.  *Cortez v. McCauley,* 438 F.3d 980, 988 (10th Cir. 2006).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz, supra*, 533 U.S. at 201.

If a violation has been shown "the next, sequential step is to ask whether the [constitutional] right was clearly established." *Id.* "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation." *Id.* at 202; *see also Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).   As a result, the "contours" of the right must be clearly defined and the constitutional right must be clearly established in a "particularized sense." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).   Although there is no requirement that the specific action in question has previously been held unlawful, the plaintiff must show that the unlawfulness of the conduct in question is 'apparent' in light of preexisting law. *Id.*

If the plaintiff successfully establishes both a violation of a constitutional right and that the right was clearly established at the time of the alleged conduct, the burden shifts to the defendant who must establish that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law. *Cortez v. McCauley, supra*, 438 F.3d at 988.

### A. Constitutional Violation

Defendant Drury contends that Plaintiffs cannot meet their first burden in response to his qualified immunity defense because they cannot show that their constitutional right to access to the courts was violated.   I agree.

Defendants first argue that under the law of the Tenth Circuit a plaintiff is required to prove that the defendant *intentionally* interfered with the plaintiff's ability to file a complaint.   At oral argument Plaintiffs' counsel, with admirable candor, conceded that there is no evidence that

Defendant Drury intentionally interfered with Plaintiffs' access to the courts.

The weight of Tenth Circuit authority tends to support requisite intentional conduct.  In *Jennings v. City of Stillwater,* 383 F.3d 1199, 1208 (10th Cir. 2004), the Tenth Circuit noted that it had previously explained, in the case of *Wilson v. Meeks,* 52 F.3d 1547, 1549 (10th Cir. 1995), *abrogated on other grounds by Saucier v. Katz, supra,* 533 U.S. at 205, that the "Fifth Circuit, which first articulated the access-to-court claim [in this context], had since limited these claims to cases alleging interference with the filing of the complaint." *Jennings v. City of Stillwater, supra*, 383 F.3d at 1208 (citations omitted).  Since the Supreme Court decision in *Christopher v. Harbury,* 536 U.S. 403, 406-07, 122 S.Ct. 2179, 153 L.Ed.2d. 413 (2002), these types of claims are known as "forward-looking" claims.

A few days after the *Jennings v. City of Stillwater* decision, in *Donohue v. Hoey, supra*, a case with persuasive value and of assistance here, 10th Cir. R. 36.3(B), the court recounted two principles related to a right-of-access claim in an unpublished opinion:  "[f]irst, intentional, bad-faith destruction or concealment of evidence that burdens a plaintiff's ability to access the courts is an unconstitutional denial of access; and, second, allegations that police were negligent in an investigation or that they negligently lost or destroyed evidence will not support a denial of access claim."  *See also McKay v. Hammock,* 730 F.2d 1367, 1375 (10th Cir. 1984) (acknowledging a constitutional right to access the court in the context of intentional police harassment); *Singer v. Wadman,* 595 F.Supp. 188, 302 (D.C. Utah, 1982), *aff'd,* 745 F.2d 606 (10th Cir. 1984) (requiring that the alleged "conduct would have to be both deliberate and so egregious as to make a plaintiff's access to the courts virtually meaningless").

10

Plaintiffs concede that they cannot produce evidence of intentional deprivation.  Instead they argue that Defendant Drury's actions during the investigation amounted to *deliberate indifference* to their right of access to the courts.  Specifically, Plaintiffs' theory, clarified during oral argument, is that Drury preconceived this matter to be a suicide and went no further in the investigation as a homicide.  So at oral argument Plaintiffs' counsel urged me to apply a deliberate indifference standard to adequately balance the rights of police officers to be protected from frivolous lawsuits and the depravation of a plaintiff's right to access the courts based on improper police investigations.  The standard of "deliberate indifference" is defined as a "stringent standard of fault requiring proof that defendant disregarded known or obvious consequences of his or her action."  *See Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).  I note that Plaintiffs cite no Tenth Circuit authority for the proposition advanced in the context of their claim in this case.  And, it is far from clear that this standard applies here.  *But see generally Ryland v. Shapiro,* 708 F.2d 967, 975 (5th Cir. 1983)(rejecting the defense argument that they are not liable because they did not intend to harm the Plaintiffs in that "[i]t is well settled that there is no requirement of specific intent in actions under section 1983").

Defendant Drury asserts that it is undisputed that he secured the crime scene, preserved the existing evidence in a reasonable manner, and forwarded extensive evidence to the Colorado Bureau of Investigation for analysis, including gunshot residue tests which indicated that the weapon was fired by the decedent and not by Mr. Cottrell.  He also maintains that it is undisputed that it was a deputy district attorney, not him as the Sheriff at the time, who made the determination that Plaintiffs' mother's death was a suicide and, as such, that no criminal charges

11

should be filed.  In sum, he contends that what occurred in this case, even when viewed in the light most favorable to Plaintiffs simply does not constitute deliberate indifference to their right to access the courts.  Plaintiffs disagree that these "facts" are "undisputed."  They respond that the undisputed facts amount to deliberate indifference by Defendant Drury.  Plaintiffs argue that with Drury's preconceived mind set, the investigation was not properly conducted as a possible homicide in that the scene was not properly secured, evidentiary tests were not ordered or were handled improperly, suspects were not adequately interviewed, and there was no follow-up investigation.

The question in *Jennings v. City of Stillwater, supra,* was "whether the United States Constitution provides a cause of action for victims of crime when state or local law enforcement officials fail to perform a proper investigation."  383 F.3d at 1205.  The following language from that decision is significant in the context of this case:

> Plaintiff next claims that she was unconstitutionally denied access to the courts. Her claim is premised on the City's destruction of the rape kit and on the various investigative omissions and irregularities allegedly committed by Detective Buzzard, which undermined her ability to bring a private tort action against her alleged assailants. Plaintiff alleges that Detective Buzzard's assumption of the role of lead investigator, the failure to interview Mr. Camacho and Ms. Roberts, and a host of other investigative shortcomings were all part of a plot to protect the football players. When taken in the aggregate, she insists that these actions violated her constitutional right to meaningful and effective access to the courts. *This Circuit has not recognized a constitutional cause of action based on denial of access to the courts under these circumstances.*

*Id.* at 1207 (emphasis added).

The salient allegations by Plaintiffs in this case, and the Fed. R. Civ. P. 56 submissions in support thereof, do not differ materially from the circumstances alleged in *Jennings v. City of*

*Stillwater.* Was Defendant Drury negligent? Probably. Was he reckless? Maybe. But it is axiomatic that this is not enough. So, even assuming an applicable standard of deliberate indifference, I conclude that considering the allegations in Plaintiffs' complaint as true and viewing the evidence and all the reasonable inferences from it in the light most favorable to them, Plaintiffs have failed to establish a genuine issue of material fact that Defendant Drury disregarded the known or obvious consequences of actions that would ultimately deprive Plaintiffs of their right to access the courts to pursue a wrongful death claim against Mr. Cottrell. Therefore, I conclude that Plaintiffs have failed to meet their first burden under the qualified immunity analysis to show that their constitutional right to access the courts was violated.

## B. Clearly Established Law

Even assuming Plaintiff could satisfy the first prong of the qualified immunity analysis, I would conclude that Plaintiffs have not met their burden under the second step of the analysis. Specifically, they cannot establish that in the context of this case, as opposed to a broad proposition, the contours of the right to access the courts was "clearly established" at the time of the violation.

The conduct at issue here occurred in April of 1984. The year before, the Fifth Circuit first addressed a §1983 claim in the context of a depravation of a plaintiff's right to access the courts to pursue a wrongful death claim in *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir. 1983). In that case, a local prosecutor was alleged to have murdered the plaintiffs' daughter. The plaintiffs' claim was that the prosecutor and the district attorney engaged in deliberate acts – i.e. they cancelled a scheduled autopsy, they improperly persuaded the coroner to sign a death certificate

13

indicating a suicide, and they stymied a possible police investigation that prevented a full investigation into the cause of the victim's death.  After finding the right to access the courts is a fundamental constitutional right, the court determined that conduct under color of law which interferes with that right gives rise to a claim for relief under §1983.  *Id.* at 972.

The Tenth Circuit relied upon *Ryland v. Shapiro*, *supra,* when it ruled on March 30, 1984 – approximately nineteen days before the incident and investigation at issue here – that the plaintiff in that case had stated a cause of action under §1983 for violation of the constitutionally protected right to access to the courts, where the plaintiff alleged that agents of a Sheriff's Office "threatened to see that his probation was revoked if he filed a civil rights action based on the [alleged wrongful] arrests."  *McKay v. Hammock, supra*, 730 F.2d at 1375.  Plaintiffs argue that based on these cases their constitutional right of access to the courts in the context of Sheriff Drury's investigation of their mother's death  was "clearly established" at the time of the investigation.  I disagree.

First, the legal contours of the right at the time of the investigation here were so murky that a reasonable officer, under the circumstances, could not have understood that what he was doing violated that right.  *Anderson v. Creighton*, *supra*, 483 U.S. at 640; *see also Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)("[i]f the law at that time did not clearly establish that the officer's conduct  would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation").   In essence, the authority at the time consisted of only: 1) a year-old case from the Fifth Circuit *(Ryland v. Shapiro*, *supra)* which first recognized a §1983 claim for the violation of the constitutional right to access to the courts for an intentional sabotage of a full police investigation into the cause of the victim's death;

14

and 2) a nineteen-day old case from the Tenth Circuit *(McKay v. Hammock, supra)* that acknowledged a constitutional right to access to the courts, and a related claim under §1983, but under significantly different facts – a threat by Sheriff's agents to revoke a plaintiff's probation if he filed wrongful arrest lawsuit.   This authority neither defines sufficiently the contours of the right, nor establishes the right in a particularized sense sufficient to inform Defendant Drury at the time of the investigation that his actions constituted a violation of Plaintiffs' constitutional right. *See e.g. Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002)(the law is clearly established when there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains). Plaintiffs cannot show that the specific actions at issue here were apparently unlawful in light of the law as it then exited.

Additionally, the parties arguments and my analysis of the case law demonstrates that even today the contours of the right remain clouded.  In 1991, this court reviewed a case in which the plaintiffs alleged that the investigation of their father's death by the defendants was deficient and, as a result, they were precluded from filing a wrongful death suit against their stepmother.  In *Stump v. Gates, supra*, the District Court distinguished three other cases to conclude that the plaintiffs' case stated a cognizable §1983 claim for denial of access to the courts barring dismissal under Fed. R. Civ. P. 12(b)(6).  *See* 777 F.Supp. at 818 (reviewing *Shaw v. Neece,* 727 F.2d 947 (10th Cir.1984); *Singer v. Wadman,* 595 F.Supp. 188 (D.Utah 1982), *aff'd,* 745 F.2d 606 (10th Cir.1984); and *Doe v. Schneider,* 443 F.Supp. 780 (D.Kan. 1978)).  On the defendants' appeal of denial of qualified immunity, the Tenth Circuit determined that the right of access to the courts has been recognized in a variety of contexts "where deliberate state conduct barred plaintiff's

15

from meaningful access to judicial review of their claims." *Stump v. Gates*, 986 F.2d 1429 (10th Cir. 1993)(unpublished opinion).  The Tenth Circuit there noted the Fifth Circuit ruling in *Ryland v. Shapiro*, *supra*, and found that although "a single case from another circuit is not sufficient to clearly establish the law in the circuit," for the purpose of assessing qualified immunity, "[n]evertheless, we do not think that *Ryland* is an aberration."  *Id.*

But then, in 1995, the Tenth Circuit ruled, again in the context of a qualified immunity defense, that it had *not* recognized a cause of action for a police cover-up as grounds for a §1983 depravation of the right to access to courts claims.  *Wilson v. Meeks*, *supra*, 52 F.3d at 1554. Subsequently, in *Jennings v. City of Stillwater*, *supra*, 383 F.3d at 1208, the Tenth Circuit indicated that *Wilson v. Meeks,* "strongly suggests that a police cover-up does not give rise to a constitutional claim of denial of access to the courts in this Circuit," but noted that it is "possible to read *Wilson* as simply holding that, at the time, the conduct did not violate any rights that were clearly established in this Circuit."   The *Jennings* court ultimately ruled that "[e]ven assuming that *Wilson* does not foreclose recognition of the access to courts cause of action here," the plaintiff's claim should be dismissed on narrower grounds of a remedy already sought and obtained under *Christopher v. Harbury, supra.  Jennings v. City of Stillwater, supra*, 383 F.3d at 1208.

In *Christopher v. Harbury, supra*, a plaintiff pressed a §1983 claim against the Secretary of State in which she asserted that U.S. government officials intentionally deceived her by concealing information related to her husband's capture by Guatemalan guerillas, and that this deception denied her access to the courts by leaving her without information, or reason to seek information, with which she could have brought a lawsuit that might have saved her husband's

life.   The Supreme Court divided "access-to-the courts" claims into two categories.   536 U.S. at 413.   The first, termed "forward-looking claims," not applicable here, are cases where official action frustrates a plaintiff's ability to bring a suit at the *present* time.   The second class, "backwards-looking claims," arise when a plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case."   *Id.* at 413-14.   As noted in *Jennings*,  "[t]he Supreme Court was careful not to endorse the validity of these backward-looking claims.   Rather, in the course of describing various forms of access-to-courts cases decided in the lower courts, the Supreme Court dropped a footnote stating:  '[s]uch cases have been decided in the Courts of Appeals; we assume without deciding the correctness of the decisions.'"   *Jennings v. City of Stillwater, supra,* 383 F.3d at 1209 (*quoting Christopher v. Harbury, supra,* 536 U.S. at 414 FN. 9).

       *Jennings v. City of Stillwater* is the last published authority from the Tenth Circuit on the issue.   However, a week after *Jennings* was decided, the Tenth Circuit issued a decision not selected for publication in which it dismissed the plaintiffs' §1983 claim based on the right to access to the courts.   *Donohue v. Hoey*, *supra*, 109 Fed.Appx. at 356.   There, the court determined that "this court has long recognized a right of access to the court" in the context of a claim that improprieties during the police investigation of the plaintiffs' daughter's death, but ruled that plaintiffs could not prevail because there was no evidence of intentional, as opposed to negligent, acts.   *Id.*   The *Donohue* court noted that in *Wilson v. Meeks, supra*, it has "recognized that destroying evidence could [under circumstances not present in that case] establish a denial of access claim."   *Id.* at 357.   And, as noted in the preceding section, the standard of culpable conduct applicable to the claim – intentional vs. deliberate indifference – likewise remains

17

unsettled.

My review of the Tenth Circuit authority – both prior to and after the conduct at issue here – leads me to conclude that the relevant law was not "clearly established" at the time in that it could not have been "clear to a reasonable official that his conduct was unlawful in the situation he confronted." *See Saucier v. Katz, supra*, 533 U.S. at 195-96; *Albright v. Rodriguez, supra*, 51 F.3d at 1537. The legal landscape of a civil rights claim for the depravation of the right to access the court, under the circumstances alleged here, remains unsettled and the contours of the right are not sufficiently established to the extent Defendant Drury would have reasonably understood that his alleged mishandling the investigation of Plaintiffs' mother's death would result in the violation of their constitutional right to access to the court to bring a wrongful death claim. Many assumptions, but not clear rules, underlie the claim. As such, Plaintiffs have not met their burden under the second step for defeating qualified immunity in this case and Defendant Drury is thus entitled to qualified immunity on Plaintiffs' §1983 claim against him.

### III. Summary Judgment

The remaining municipal Defendants – David D. Stong, in his official capacity as Sheriff of the County of Alamosa, and the Alamosa County Sheriff's Department (collectively, the "Sheriff Defendants") and Defendant Alamosa County Board of Commissioners – contend that they are entitled to summary judgment in their favor. I agree.

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment should be entered if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the

governing substantive law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986).  The non-moving party has the burden of showing that there are issues of

material fact to be determined.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986).  A party seeking summary judgment bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of the

pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any,

which it believes demonstrate the absence of genuine issues for trial.  *Id*. at 323;  *Mares v.*

*ConAgra Poultry Co.*, *Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

Once a properly supported summary judgment motion is made, the opposing party may

not rest on the allegations contained in his complaint, but must respond with specific facts

showing the existence of a genuine factual issue to be tried.  *Otteson v. United States*, 622 F.2d

516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e).  These specific facts may be shown "by any of

the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves."  *Celotex*

*Corp. v. Catrett, supra*, 477 U.S. at 324.

## A. Sheriff Defendants

In their complaint, Plaintiffs allege that the "established policies, procedures and customs

of the Alamosa County Sheriff's Department . . . as established and promulgated, were

insufficient to protect the constitutional rights of the Plaintiffs" and that Plaintiffs' constitutional

rights were violated "by failing to train employees and agents in such a manner that amounts to

deliberate indifference to the rights of citizens with whom the employees interact." Plaintiffs also assert that the Sheriff Defendants "by their official policy, regulations, decisions and unofficial customs and usages, knew of or acquiesced in the formation or implementation of the investigation policy, and were therefore responsible for the unlawful actions of the individual Defendants" and they "expressly or personally authorized, approved, acquiesced or were deliberately indifferent to the violation of Plaintiffs' rights."

First and foremost, because I have determined that there was no violation of Plaintiffs' constitutional right to access the courts, there is nothing to impute to the Sheriff Defendants. *Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1154 (10th Cir. 2001)(concluding that a municipality cannot be held liable for the actions of its employees if those actions do not constitute a violation of a plaintiff's constitutional rights).

Moreover, local governments can only be sued under §1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To establish municipal liability under §1983, a plaintiff must show: "(1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 592 (10th Cir. 1999)(*quoting Hollingsworth v. Hill*, 110 F.3d 733, 742 (10th Cir. 1997)).

Initially, Plaintiffs have not come forward with any specific allegations or evidence related to policies or training deficiencies that resulted in the claimed deliberate mishandling of the

20

investigation into their mother's death.  Plaintiffs rely on the opinion of their expert that several deficiencies and improprieties in the investigation violated the basic standard of investigative procedures and, in his opinion, would have been the expectation over twenty years ago, even in the rural setting at issue here, and that related training for such procedures would have been available.   I disagree, however, that the alleged problems with the investigation of this matter necessarily infers a lack of training, or that such inference rises to the level of sufficient evidence to demonstrate that improper policies or training by the Sheriff Defendants amounted to deliberate indifference to the right of persons with whom the Sheriffs come in contact.  *See City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)(recognizing municipal liability under §1983 for failure to adequately train law enforcement officials where such failure amounts to deliberate indifference to the rights of persons whom police come in contact).

In addition, it is not enough to show that there were general deficiencies in the relevant training program; rather, a plaintiff "must identify a specific deficiency in the County's training program closely related to his ultimate injury, and must prove that the deficiency in training actually caused [the officer] to act with deliberate indifference." *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999)(*citing City of Canton v. Harris, supra*, 489 U.S. at 391).  "To survive summary judgment, [a] plaintiff must go beyond his pleadings and show that he has evidence of specific facts that demonstrate that the [defendant] exhibited deliberate indifference towards him in its alleged failure to institute a proper policy and in not properly training and supervising its officers." *Medina v. City and County of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992)(*quoting Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988)).  Plaintiffs have failed to so and have likewise failed to provide any evidence in support of a failure to supervise in order

21

to sustain §1983 municipal liability.

Therefore, because I have determined that there was no underlying constitutional violation, and because Plaintiffs have failed to allege or identify a genuine issue of material fact to support any unconstitutional defect in the training program or supervision that subjects the Sheriff Defendants to municipal liability, I conclude that Plaintiffs' §1983 claim against the Sheriff Defendants does not survive summary judgment.

**B. Defendant Alamosa County**

For the same reasons,  Defendant Alamosa County Board of Commissioners is likewise entitled to summary judgment in their favor on Plaintiffs' failure to train and supervise claim.

Furthermore, I agree that a claim against a County Board of Commissioners for failure to supervise the County Sheriff  is not valid under Colorado law.  I am not persuaded by Plaintiffs' assertion that the ruling in *Tunget v. Board of County Com'rs of Delta County*, 992 P.2d 650 (Colo. App. 1999), is distinguishable and thus not applicable here.  In that case, the Colorado Court of Appeals found that the "sheriff, rather than the county or the Board [of Commissioners], would be liable for the action of the deputy sheriff" on the basis that "[u]nder both the Colorado Constitution and applicable statutes, sheriffs and boards of county commissioners are treated as separate public entities having different powers and responsibilities." *Id.* at 651-52.  *See also Bristol v. Board of County Com'rs of County of Clear Creek*, 312 F.3d 1213, 1215 (10th Cir. 2002)(applying the ruling in *Tunget* to reject an argument that the board was the employer of a confinement officer for ADA accommodation).

22

### *IV. Conclusion*

ACCORDINGLY, for the foregoing reasons, IT IS ORDERED, that:

1) Defendants' Motion to Dismiss and/or Motion for Summary Judgment filed on January 31, 2006, **[Doc #60]** is GRANTED;

2) Defendants' Motion for Summary Judgment filed on February 1, 2006, **[Doc #62]** is GRANTED; and

3) this civil action is DISMISSED, with COSTS AWARDED to Defendants.   The Clerk of the Court is directed to enter judgment in favor of the Defendants.

Dated:  June    21   , 2006, in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, CHIEF JUDGE